IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KAREN E. COLLINS,

      Plaintiff,

v.                                                                    Civil Action No. 3:18cv636

VERNADERO GROUP, INC.,

      Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Vernadero Group, Inc.'s ("Vernadero") Motion to Dismiss Plaintiff's Complaint (the "Motion to Dismiss").[1] (ECF No. 7.) Plaintiff Karen Collins, proceeding *pro se*, responded in Opposition (the "Opposition"), (ECF No. 10), and Vernadero replied, (ECF No. 13).[2] This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331.[3] For the reasons that follow, the Court will grant the Motion to Dismiss.

---

[1] Vernadero included in the Motion to Dismiss a notice consistent with the requirements set forth in *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Local Civil Rule 7(K). (Mot. Dismiss 1 n.1, ECF No. 7.) The Roseboro Notice informed Collins that she had twenty-one (21) days to respond to the Motion to Dismiss, and that failure to respond could result in dismissal of her claims. Collins timely responded.

[2] Collins attached to her Opposition extrinsic materials which, as discussed later, the Court did not consider in resolving the Motion to Dismiss.

[3] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Complaint alleges that Vernadero violated Collins's rights pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA").

# I. Factual and Procedural Background

## A. Procedural Background

Collins brings a two-count Complaint against Vernadero,[4] alleging that her former employer terminated her employment and failed to accommodate her disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA"), after she took an eleven-month leave of absence without pay and could not provide an affirmative return-to-work date. (Compl. 8–10, ECF No. 1.) Vernadero filed the Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),[5] seeking dismissal of the Complaint for failure to state a claim. Collins responded and Vernadero replied.

## B. Collins's Employment Background

Collins's Complaint stems from the termination of her employment with Vernadero. Collins began working for Vernadero as a project manager in April 2009 and Vernadero terminated her employment on June 28, 2016. Throughout her tenure with Vernadero, Collins received positive annual performance reviews resulting in annual bonuses, and "frequent praise and positive feedback from clients." (Compl. 7.)

In 2015, Collins "fell ill and began experiencing prolonged periods of disabling pain, extreme fatigue, memory loss, and cognitive impairment." (*Id.*) In June 2015, doctors

---

[4] Because Collins proceeds *pro se*, the Court liberally construes her filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks and citations omitted).

[5] Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For the purpose of the Rule 12(b)(6) Motion to Dismiss, "a court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011)).

diagnosed Collins with fibromyalgia and an underlying immune deficiency. (*Id.*) Several weeks later, Collins recognized that "the illness combined with the side effects of the medication were debilitating enough to make [her] incapable of performing [her] job." (*Id.*) After discussions with Christine Howard, Vice President of Vernadero, Sara Jackson, Collins's supervisor, and Joanne Maiden, Human Resources Manager, Collins applied for short-term disability. (*Id.*) Collins stopped working on July 28, 2015. (*Id.* 8.) Collins became an "inactive" employee and alleges that there were "several other [Vernadero] employees with inactive statuses at that time." (*Id.*) Collins's physician informed Vernadero that she would return to work on October 28, 2015, three months after she started short-term disability. (*Id.*)

In her Complaint, Collins states that her "treatment did not go as planned and [she] was unable to return to work [on] October 28, 2015." (*Id.*) Collins alleges that she informed Christine Howard and Sara Jackson that she needed an extended absence and that she then filed for long-term disability with the help of Joanne Maiden. (*Id.*) Collins asserts that she updated Sara Jackson "weekly" and that she contacted Christine Howard "less frequently." (*Id.*) Collins alleges that "during that timeframe [no one] at the Company communicate[d] anything to me about my absence being a problem." (*Id.*)

Eight months later, in June 2016, Christine Howard left Vernadero. (*Id.*) On June 14, 2016, Collins received an email from Joanne Maiden inquiring about her well-being. (*Id.*) Collins did not immediately respond to that email. (*Id.*) On June 20, 2016, Joanne Maiden sent a second email to Collins "stating that there was no written documentation in [Collins's] personnel file beyond [her] doctor's original note for short-term disability." (*Id.*) On June 22, 2016, Joanne Maiden sent Collins a third email, in which she asked Collins to call her. (*Id.* 9.) On June 26, 2016, Collins responded to the emails and informed Maiden that she would be

3

undergoing surgery on June 28, 2016. (*Id.*) Collins told Maiden that she thought she would need roughly six to eight weeks to recover from that surgery. (*Id.*)

On June 28, 2016—the day of Collins's surgery—Maiden sent Collins an email with a termination letter attached, ending her employment with Vernadero effective immediately. (*Id.*) Collins alleges that "[t]he termination letter references a voluntary termination, claiming that the reason [for termation] was that there was no written documentation to support my continued medical leave of absence beyond October 28, 2015 and that there was no additional leave available to accommodate a continued absence." (*Id.*) On July 14, 2016, Collins replied to Maiden's email, asserting that she had "complied with Company policy regarding medical leave and supplied written documentation that my leave would extend beyond October 25, 2015." (*Id.*) Collins further asserted that she had a "verbal agreement" with Sara Jackson and Christine Howard for "indefinite leave" although such leave was "never expressly guaranteed." (*Id.*)

On September 17, 2016, eleven and a half weeks after her surgery, Collins' doctor conditionally released her to return to work. (*Id.*) Collins did not, however, return to work at Vernadero because the company had terminated her employment. Collins alleges that she then "began the hunt for new employment and filed for unemployment, which the Company contested." (*Id.*) The state awarded Collins unemployment benefits. (*Id.*)

To support her ADA claim, Collins alleges that her symptoms and illnesses qualify her as "[disabled] under the Americans with Disabilities Act." (*Id.* 10.) Collins further contends that she had a "verbal agreement of an indefinite amount of medical leave" with the Vice President of Vernadero, who had authority to make such decisions. (*Id.*) Collins asserts that Vernardero failed to inform her that her accommodation was in jeopardy. (*Id.*) Collins alleges that Vernadero's discriminatory conduct has caused her to suffer the loss of past and future income,

"benefits, lost career opportunities, damage to reputation, embarrassment, inconvenience, emotional and mental anguish which exacerbates physical conditions, consequential damages, and court and possible attorney's fees." (*Id.* 11.)

On April 5, 2017, Collins filed her charge of discrimination with the Equal Employment Opportunity Commission (EEOC). On June 15, 2018,[6] the EEOC issued Collins a right-to-sue letter after finding that Collins "took extended medical leave as reasonable accommodation" and that Vernadero "subsequently discharged [Collins] after [she] failed to report to work for almost a year." (Right-to-Sue Letter 1, ECF No. 1-1.) The EEOC further stated that it found it "unlikely that further investigation of [Collins's] charge will result in [] finding" a legal violation because Vernadero operated as a "very small employer and was unable to extend an indefinite leave period."[7] (*Id.*) The instant lawsuit followed.

---

[6] Collins attached as an exhibit to her Complaint the right-to-sue letter that she received from the EEOC. The Court observes that the EEOC issued its letter to Collins on June 15, 2018, and the corresponding envelope addressed to Collins bears the date June 18, 2018. (Compl. Ex. A, "Right-to-Sue Letter" 3, ECF No. 1-1.) Collins filed her Complaint on September 19, 2018—96 days after the EEOC issued its right-to-sue letter and 93 days after the June 18 date apparent on the envelope. Although Courts in the Fourth Circuit must strictly construe the 90-day time limit in which a plaintiff must file suit following receipt of a right-to-sue letter, *Lewis v. Norfolk S. Corp.*, 271 F. Supp. 2d 807, 811 (E.D. Va. 2003), Vernadero does not challenge the timeliness of the *pro se* Complaint. Because the EEOC envelope bears the date June 18, 2018, the Court adds three days after that date to determine when Collins received the notice. *See Panyanouvong v. Vienna Wolftrap Hotel*, 525 F. Supp. 2d 793, 796–97 (E.D. Va. 2007) ("When the date that a potential plaintiff received actual notice of right to sue is disputed or unknown, [Federal Rule of Civil Procedure 6(d)] creates the presumption that notice was received three days after it was mailed."). For purposes of deciding the Motion to Dismiss, the Court finds that Collins timely filed the Complaint and will address the Motion to Dismiss on the merits.

[7] The parties do not dispute that the Family and Medical Leave Act (FMLA) does not apply to Vernadero because the number of employees who work at the company do not make it subject to that statute. *See* 29 U.S.C. § 2611(2)(B). Collins does not assert that Vernadero violated the FMLA.

## II. Applicable Legal Standards

### A.　Standard of Review: Rule 12(b)(6) Standard

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990) ). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.") Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193 (citation omitted). The Court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 676-79; *see also Kensington*, 684 F.3d at 467 (finding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all

of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *Kolon Indus.*, 637 F.3d at 440)).

### B. <u>Effects of Extrinsic Documents</u>

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). However, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citations omitted). "[I]n the event of conflict between the bare allegations of the complaint and any attached exhibit . . . , the exhibit prevails." *Fayetteville Inv'rs v. Commercial Builders*, 936 F.2d 1462, 1465 (4th Cir. 1991) (citation omitted)

### III. Analysis

#### A. In Accordance with Federal Rule of Civil Procedure 12(d), the Court Excludes the Extrinsic Materials Collins Presented in her Opposition

At the outset, the Court excludes the extrinsic materials Collins presented in her Opposition. Fed. R. Civ. P. 12(d).[8] Although Collins attached to her Opposition (1) affidavits from herself, Christine M. Howard, and Sara M. Jackson; (2) emails between herself and Joanne Maiden; and, (3) a copy of her termination letter, the Court did not consider these materials in

---

[8] Because no one disputes its authenticity and it is integral to her Complaint, the Court does not exclude the EEOC right-to-sue-letter that Collins attached to her pleadings. (ECF No. 1-1.)

7

resolving the issues raised in the Motion to Dismiss. As a result, nothing here converts the Motion to Dismiss to a motion for summary judgment.

### B. Collins Fails to State a Claim Upon Which Relief May be Granted Because, Based on the Facts Alleged, She Cannot Establish Any ADA Violation

Accepting all well-pleaded allegations in the Complaint as true and viewing the Complaint in the light most favorable to the Collins, the Court concludes that Collins fails to state a claim upon which relief may be granted. Based on the allegations in the Complaint, Collins is not a qualified individual under the terms of the ADA. Even if the Court decided that Collins were a qualified individual, Collins also fails to sufficiently plead a claim of discriminatory discharge based on her disability. Collins similarly fails to plead a failure to accommodate claim, as the facts alleged—viewed favorably—show that Vernadero provided Collins ample leave prior to her termination and that Collins did not identify a reasonable accommodation that would have permitted her to satisfy the essential functions of her job. Accordingly, the Court will grant Vernadero's Motion to Dismiss.

#### 1. Collins is Not a Qualified Individual Under the ADA Because She Could Not Perform the Essential Functions of Her Position

Even reading Collins's Complaint liberally, the Court must find that Collins does not qualify under the ADA because she could not perform her essential job functions due to her prolonged absence from Vernadero. The ADA defines "qualified individual" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 212–13 (4th Cir. 1994); 42 U.S.C. § 12111(8). An employee who cannot come to work, despite her employer's efforts to reasonably accommodate her disability, cannot be considered a qualified individual. *Tyndall*, 31 F.3d at 213; *see also*

8

*Watson v. Fairfax Cty.*, 297 F. Supp. 3d 591, 600–01 (E.D. Va. 2018) (finding that employee was not a qualified individual under the ADA because frequent absences rendered the employee unable to perform essential job functions).

Here, Collins contends, and Vernadero does not dispute, that beginning in July 2015, Collins took a leave of absence from Vernadero. Collins asserts that she did not return to work for eleven months. While she avows that she remained in informal contact with Sara Jackson and Christine Howard, she admits that she did not work for nearly one year. The allegations further show that when Vernadero asked Collins about her health status eleven months later, she did not provide an affirmative return-to-work date. At that time, nearly one year after Collins stopped working, Vernadero terminated her employment.

Although Collins further alleges that her doctor conditionally released her to work in September 2016, that subsequent release does not alter the analysis nor overcome her eleven-month absence from employment. Based on Collins's own allegations, even read liberally, the Court finds that Collins does not constitute a qualified individual under the ADA because she did not attend work for nearly one year or otherwise perform the essential functions of her job prior to Vernadero terminating her employment. Indeed, an employee "who does not come to work cannot perform *any* of [her] job functions, essential or otherwise." *Tyndall*, 31 F.3d at 213 (citation omitted).

  **2.**  **Collins Does Not Sufficiently Plead an ADA Discriminatory Discharge Claim Because She Was Not Meeting the Legitimate Expectations of Her Employer and Her Discharge Does Not Raise a Reasonable Inference of Unlawful Discrimination**

Even assuming Collins were a qualified individual and the ADA applies, Collins would fail to allege a discriminatory discharge claim based upon her disability because she was not meeting the legitimate expectations of her employer and her discharge does not raise a

reasonable inference of unlawful discrimination. In an ADA wrongful discharge case, a plaintiff establishes a prima facie case if she demonstrates that (1) she falls within the ADA's protected class; (2) her employer discharged her; "(3) at the time of [her] discharge, [s]he was performing the job at a level that met [her] employer's legitimate expectations; and, (4) [her] discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 702 (4th Cir. 2001). Again due to her prolonged absence, Collins fails to plead facts sufficient to satisfy the third or fourth prongs of a prima facie discriminatory discharge case.

Regular and reliable level of attendance is an essential function of one's job. *See Hannah P. v. Coats*, 916 F.3d 327, 334, 339 (4th Cir. 2019) (concluding that the ability to show up to work amounts to an essential job function. Here, Collins does not allege that she was attending work, thereby meeting the legitimate expectations of her employer, Vernadero. Indeed, she pleads to the contrary. As a result, Collins does not satisfy the third prong of a prima facie wrongful discharge case.

Collins likewise fails to satisfy the fourth prong of an ADA discriminatory discharge prima facie case, as she did not plead that Vernadero terminated her employment because of her disability. Collins did not, for example, allege that Vernadero allowed employees who did not have a disability to take leave for more than a year without an affirmative return-to-work date. Because Collins did not allege facts sufficient to establish a prima facie wrongful discharge case, this claim fails as a matter of law.

### 3. Because Vernadero Provided Collins Leave and She Did Not Identify a Reasonable Accommodation That Would Have Permitted Her to Satisfy the Essential Functions of Her Job, Collins's Reasonable Accommodation Claim Fails As a Matter Of Law

Lastly, even assuming Collins does represent a qualified individual and the ADA applies, Collins fails to allege a prima facie case for failure to accommodate. To establish a prima facie case for failure to accommodate, Collins must allege: "(1) that [she] was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of [her] disability; (3) that with reasonable accommodation [she] could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 579 (4th Cir. 2015) (alteration in original) (citation omitted). The ADA imposes upon employers a good-faith duty "to engage [with their employees] in an interactive process to identify a reasonable accommodation." *Id.* at 581. "This duty is triggered when an employee communicates her disability and desire for an accommodation—even if the employee fails to identify a specific, reasonable accommodation." *Id.* An employer, however, "will not be liable for failure to engage in the interactive process if the employee ultimately fails to demonstrate the existence of a reasonable accommodation that would allow her to perform the essential functions of the position." *Id.*

The plaintiff bears the burden of identifying a reasonable accommodation that would have permitted her to satisfy the essential functions of her job. *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 464–65 (4th Cir. 2012). Relevant here, reasonable accommodation claims may fail where the plaintiff fails to sufficiently plead "that she could perform perhaps the most essential function of all—regularly showing up to work—with or without reasonable accommodations from defendant." *Vanyan v. Hagel*, 9 F. Supp. 3d 629, 638 (E.D. Va. 2014). Furthermore, a reasonable accommodation does not require an employer to wait indefinitely for a

plaintiff's medical condition to be corrected because such indefinite accommodations are not considered reasonable. *See, e.g., Credeur v. La. Through Office of Att'y Gen.*, 860 F.3d 785, 797 (5th Cir. 2017) (collecting cases); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 338 (2d Cir. 2000) ("The duty to make reasonable accommodations does not, of course, require an employer to hold an injured employee's position open indefinitely while the employee attempts to recover, nor does it force an employer to investigate every aspect of an employee's condition before terminating him based on his inability to work.") Indeed, courts in the Fourth Circuit have found that requesting indefinite leave places employers in untenable business positions. *See, e.g., McNeil v. Scotland Cty.*, 213 F. Supp. 2d 559, 570 (M.D.N.C.), *aff'd*, 53 F. App'x 242 (4th Cir. 2002).

Again, on account of her prolonged absence, Collins's failure to accommodate claim fails because her Complaint, as alleged, cannot satisfy the third and fourth prongs of a prima facie failure to accommodate claim. Even read liberally, Collins's own allegations show that Vernadero knew about her disability and provided her ample leave after engaging with her about her illness. Collins even claims that she had a verbal agreement for "indefinite leave." But, as her Complaint shows, Collins could not perform the essential functions of her position because she could not attend work, thus faltering at the third prong of the failure to accommodate test.

Collins also did not allege that Vernadero refused to provide her a reasonable accommodation, as required to satisfy the fourth prong of a failure to accommodate claim. Rather, her Complaint shows the opposite. Vernadero, a company too small to be governed by the FMLA, extended to Collins a prolonged period of leave. Only when Vernadero contacted Collins regarding her plans to return to work—eleven months after her absence commenced—did Collins inform her employer that she was undergoing further treatment and surgery.

According to her Complaint, Collins never told Vernadero when she would be able to return to work, apart from saying that she would need an additional six to eight weeks of recovery time after her June 28, 2016 surgery. Even then, Collins's Complaint shows that she did not recover within that time frame. Because an indefinite amount of leave is not an accommodation that the ADA requires, and because Collins did not identify a reasonable accommodation that would have permitted her to satisfy the essential functions of her job, Collins's failure to accommodate claim fails as a matter of law.

## IV. Conclusion

For the foregoing reasons, the Court will grant the Motion to Dismiss because Collins's Complaint fails to state a claim upon which relief can be granted. (ECF No. 7.)

An appropriate order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 6/28/2019
Richmond, Virginia